| | | |
|---|---|---|
| JIMMY DAWSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **SECOND** |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| U.S. TEXTILE CORP., a North Carolina | ) | |
| Corporation; and CONSOLIDATED | ) | |
| WORK INDUSTRIES, INC., a North | ) | |
| Carolina Corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendants U.S. Textile Corp.'s (hereinafter "USTC's") and Consolidated Work Industries, Inc.'s (hereinafter "CWI's") Motion for Summary Judgment (#36) and plaintiff's Motion to Compel Filing of Transcripts of Depositions Conducted by Defendants (#44). Having carefully considered the motions of the respective parties, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Background

In this action, filed under Title VII of the Civil Rights Act of 1964, plaintiff contends that he was the victim of racial discrimination in employment. Compl., at ¶ ¶ 6 & 12. Plaintiff performed such work while incarcerated in the North Carolina Department of Correction, at its Mountain View Correctional Facility, which is located in Avery County, North Carolina. Id., at ¶ ¶ 3 & 9. Plaintiff's work was as a machine operator in North Carolina's "Prison Industry Enhancement Program," known as the "PIE" program. Id., at

¶ 9. Although the program was sponsored by state correction authorities, he has alleged that he was employed by U.S. Textile Corp. (hereinafter "USTC") and CWI, Compl., at ¶ 9, and that while so employed, he was subjected to racial discrimination, id., at ¶ 10, and that defendants' plant manager Judy Grubb did nothing to stop such discrimination. Id., at ¶ 11.

## II.     Standard Applicable to Defendants' Motion for Summary Judgment

### A.     Defendants' Motion for Summary Judgment

At the close of discovery, defendants have moved for entry of summary judgment in accordance with Rule 56(b), Federal Rules of Civil Procedure, contending that plaintiff cannot satisfy his obligation of showing a *prima facie* case of a race-based hostile work environment, or that he was subjected to differential treatment in promotions based on race, or that his termination was racially motivated or in retaliation for protected activities. Further, CWI has moved for summary judgment contending that this court lacks subject matter jurisdiction over it inasmuch as it was not named in the administrative charge. All defendants have also moved for summary judgment inasmuch as a number of plaintiff's allegations in this civil action were not first administratively raised.

Plaintiff has timely filed his response, arguing primarily that "he is entitled to his day in court and to a determination by a jury as to whether Mr. Gardner, his supervisor, referred to him within the plaintiff's hearing as a "damn nigger" following previously having referred to equipment as being "nigger rigged" and as to whether the plant manager of the USTC operation at plaintiff's work facility told him that "he would simply have to get use to it." Response, at 3. Defendants have timely filed their reply.

### B.     Applicable Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that

burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his

or her favor. <u>Anderson</u>, <u>supra</u>, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Id.</u>, at 252.

## III.    Undisputed Facts Drawn from the Evidentiary Materials

Plaintiff correctly points out that defendants have devoted a great deal of their argument to whether or not plaintiff's version of what was allegedly said in the plant should be believed. Plaintiff correctly argues that at the summary judgment stage the credibility of the plaintiff is not at issue and his version of what occurred must be accepted for the limited purpose of determining whether summary judgment should be allowed. The undersigned has, in accordance with Rule 56, viewed the alleged facts in a light most favorable to plaintiff. Plaintiff's speculation as to the import of any such facts and his legal conclusions have not been given such deference.

### A.    The Prison Industry Program

At all times relevant to this civil action, plaintiff was an inmate in the custody of the North Carolina Department of Correction (hereinafter "DOC"). He was housed at the Mountain View Correctional Institute in Avery County, North Carolina (hereinafter "Mountain View"). Complaint, at ¶ 3. Between approximately 2001 and 2004 plaintiff participated in an institutional work program as a machine operator through the Prison Industry Enhancement Program (hereinafter "PIE"). Complaint, at ¶ 9.

The PIE program is administered by the DOC, and defendant CWI contracts with the DOC to provide work for inmates through PIE at Mountain View. <u>See</u> Sherwood Smith Aff., at ¶ 3. CWI operates under a "verbal agreement" with defendant USTC, which in turn provides equipment, raw materials, and supervision in the PIE program at Mountain View. Smith Aff., at ¶ 4; Lengers Aff., at ¶ 5; Grubb Aff., at ¶¶ 7-8. USTC supplies all of the

direct supervision of the production of pantyhose at Mountain View. Grubb Aff., at ¶¶ 6, 8. The undersigned finds that such affidavits are consistent with the allegations of the Complaint and other evidentiary materials which indicates that all of plaintiff's supervisors and managers were employees of USTC. Plaintiff's pay statements indicated that he was being paid by CWI and that CWI was his actual employer.

**B.      The Administrative Charge of Discrimination**

Prior to initiating this action, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 8, 2004, alleging certain acts of racial discrimination in employment. Compl., at ¶ 6. On August 30, 2004, the EEOC issued a "Dismissal and Notice of Rights" to Plaintiff and served notice of the "Dismissal and Notice of Rights" on USTC, but did not serve CWI. Compl., at ¶ 6.

The EEOC charge alleges that plaintiff was subjected to racial harassment because there were two nooses in the plant and that on November 11, 2003, a USTC employee, Keith Gardner, called him a "damned nigger." The EEOC charge does not allege discrimination in transfer, promotion or termination. Pl.'s Dep., Defs.'Ex. 8; Pl.'s Dep. pp. 140-42. CWI was not named as a respondent in the Charge. Pl.'s Dep., Defs.' Ex. 8. CWI did not receive notice of the Charge and was not given an opportunity to participate in conciliation with the EEOC. Smith Aff., at ¶ 11.

**C.      The Small, Replica Hangman's Nooses**

During the process of discovery, defendants deposed plaintiff as well a number of other inmates with leave of this court. Fed.R.Civ.P. 30(b)(2). During those depositions plaintiff testified that in 2001, a hangman's noose was found on or near the work area of Chad Buchanan, a white inmate, which was located 20-30 feet from Plaintiff's work area. Pl.'s Dep., at 21. Plaintiff stated that he believed the 2001 noose found on or near Chad

Buchanan's workspace was left by Paul Thomas, an employee of USTC who is also white. Pl.'s Dep., at 30-31. Plaintiff further testified that he does not believe that the Buchanan noose was directed towards him. Pl.'s Dep., at 32.

In 2001, plaintiff testified that he saw another noose about ten to fifteen feet from his machine hanging from a ceiling over a break table. Pl.'s Dep., at 34-38. He stated that no one said anything to him to make him believe that the noose was directed to him personally. Pl.'s Dep., at 44. Plaintiff testified that he never found a noose at his own work space. Pl.'s Dep., at 22.

Consistent with plaintiff's testimony is the testimony of fellow inmate George Charles, who also worked in PIE and saw the two nooses. He testified that both nooses were placed by Mr. Thomas, a white USTC employee because the Mr. Thomas was angry about Buchanan's involvement in an incident involving that Mr. Thomas' girlfriend, who was an employee of USTC and who was also white. Charles Dep., at 12-26. It is undisputed that both nooses were no larger than six inches long. Charles Dep., at 23-24.

### D. Alleged Racially Derogatory Comments by Plaintiff's Supervisor

Plaintiff alleges and has testified that USTC employee Keith Gardner (hereinafter "Gardner") had a conversation with plaintiff sometime before 2003, wherein Gardner described a piece of equipment as "nigger rigged." Plaintiff does not recall when this took place, but believes it was before 2003. Pl.'s Dep., at 69,106, 118, & 119. Plaintiff testified that the comment was preceded by Gardner asking him if he would be offended if Gardner said something. Plaintiff considered that he and Gardner were friends at the time of the conversation and believed the conversation was friendly and that Gardner would say something jokingly. Pl.'s Dep., at 68-70, & 108-109. Plaintiff never complained to any USTC employee that Gardner used the term "nigger rigged." Pl.'s Dep., at 111. Plaintiff's

EEOC charge does not include an allegation that Keith Gardner used this term. Pl.'s Dep., at Defs.' Ex. 8.

Plaintiff also alleges and testifies that on November 11, 2005, Gardner used the term "damn nigger," when Gardner was speaking to another USTC employee, T.R. Hughes, at a time when Gardner was standing 15 feet away from Plaintiff. Pl.'s Dep., at 53, 54, & 59.13. T.R. Hughes ("Hughes") provided a written statement in response to plaintiff's grievance to the DOC and the subsequent investigation. Hughes states that he did not hear Gardner call Dawson anything. See DOC Grievance and Investigation attached to Grubb Aff. For purposes of the pending motion, however, the undersigned has treated plaintiff's allegation and testimony as being true and will disregard the Hughes statement to the contrary, as well as other contradictory evidence including the statement of Nathan Oakes.[1] See DOC Grievance and Investigation, attached to Grubb Aff.

That same day, plaintiff told USTC plant manager Judy Grubb that he was having personal problems. Pl.'s Dep., at 76. The following day he told Grubb that Gardner used a racial slur the preceding day. Grubb met with plaintiff and Gardner, and Gardner denied using the term "nigger." Pl.'s Dep., at 79-80. Again, the undersigned has accepted as true plaintiff's testimony that Gardner used the alleged racial slurs.

After November 11, 2003, plaintiff never heard Gardner, Grubb, or any other USTC employee use the word "nigger." Pl.'s Dep., at 80-81. Plaintiff does not allege that he has heard Gardner use the term "nigger" other than the alleged comment on November 11, 2003 and the alleged "nigger rigging" comment on an unknown date. Pl.'s Dep., at 115-116.

### E. Denials of Transfers within PIE and His Termination in 2004 From the PIE Program

---

[1] Oakes also stated that he was working at plaintiff's workstation at the time of the alleged offensive remark and heard nothing.

Plaintiff testified he was aware that USTC had a written policy that limited transfers from one position to another within the PIE program. Pl.'s Dep., at 138; Pl.'s Dep., Defs.' Exhibit 5; Grubb Aff. , Attach., at 1.  Plaintiff never submitted a written request for a transfer to another position. Pl. Dep., at 89.  Plaintiff does not know when he last requested a transfer to another position. Pl.'s Dep., at 118. Plaintiff believes he requested and was denied a promotion to an inspector position between 2000 and 2004, but does not know exactly when. Pl.'s Dep., at 114.  Plaintiff testified that he was not promoted to inspector, but that Grubb never told him she was denying a transfer or promotion based on his race.  Pl.'s Dep., at 94. While plaintiff filed a grievance with the DOC in November 2003 complaining of Gardner's November 11 comment, pl.'s dep., at 88, his grievance does not allege discrimination in transfer or promotion. Slagle Aff., at  Ex. B

Plaintiff further testified that he was aware that DOC policy requires termination of inmates' participation in PIE after three years. Pl.'s Dep, at 121;Slagle Aff. ¶ 10. Plaintiff signed an acknowledgment of the PIE program rules, including the three year limitation on participation. Slagle Aff., at  Ex. C ¶ 23.  Plaintiff was terminated from the PIE program on August 23, 2004, which was more than three years since he started. Pl.'s Dep., at 144. Fifteen other inmates were terminated from the PIE program the same day.  Pl.'s Dep., at 123. No one told Plaintiff he was being laid off because he made a complaint or because of his race. Pl.'s Dep., at 124.  Plaintiff's testified that his belief that he was terminated in retaliation for complaining about the racial comments made by Gardner  because Grubb had told him not to worry about lay off or termination.  Pl.'s Dep., at 123 & 125.

F.      The Role of CWI

Plaintiff has presented evidence that CWI indicated it was his employer on his wage statement.  However, it is undisputed that CWI has a written contract with DOC to provide

PIE work opportunities for inmates at Mountain View. Smith Aff., at ¶ 3. CWI and USTC have a verbal contract to provide PIE opportunities at Mountain View. CWI provides payroll services and USTC provides materials, equipment and supervision. Grubb Aff., at ¶¶ 7-8; Lengers Aff. ¶ 6.

Defendants' affidavits concerning the separate identities of USTC and CWI are undisputed by evidence submitted by plaintiff, and show: such entities have no joint or related management or operations; they do not have any subsidiary, parent or sister corporate relationships; they have no common stock ownership and no common directors, officers, or employees; they have no common purpose other than the fulfillment of a verbal agreement regarding the PIE program at Mountain View. See Lengers Aff., at ¶¶ 8-9 and Attachs. pp. 1-17; Smith Aff. ¶¶ 6-7, 9 and Attachs. pp. 1-6. In response, plaintiff argues that the arrangement between CWI and USTC "is all very vague." Response, at 6.[2]

## IV.    Motion to Compel Production of Transcripts at Defendants' Expense

Plaintiff has also filed a motion to compel defendant to produce copies of the complete transcripts of certain depositions taken by defendants of other prisoners. Review of the excerpts taken from such depositions reveals that plaintiff received notice of the depositions and was ably represented at such depositions by counsel. Apparently, counsel for plaintiff did not purchase copies of such depositions from the court reporter service.

Without citation to any case law, plaintiff argues that this court should compel plaintiff to provide him with copies due to his "poverty" and due to the fact that the court

---

[2]    The undersigned notes that while the undersigned and the district court went to great lengths to analyze the previously filed motion to dismiss, and to deny that motion to afford plaintiff an opportunity to conduct further discovery on the relationship between CWI and USTC, little additional material has been proffered in response to the renewed motion seeking dismissal of CWI. In fact, the argument presented is nearly identical to that submitted in response to the earlier motion.

allowed such depositions under Rule 30(a)(2), Federal Rules of Civil Procedure. In response, defendants argue that transcripts are available as they always are under Rule 30(f)(2), and that Local Rule 26.1 requires only the filing of relevant portions of depositions.

Plaintiff argues that notwithstanding his poverty, the court should require the full transcripts of these depositions "to be made part of the record for consideration of the Court in connection with this motion." Motion to Compel, at 2. Clearly, the concluding sentence LR 26.1 would allow this court to require the filing of the complete transcript if the court determined that they were necessary for decision. By not pointing to any actual deficiency in the excerpts provided, plaintiff is attempting to have the court to require production of a copy of a full transcript in order for plaintiff to avoid the cost of paying for one.

The undersigned can find no provision of law that requires the defendant to foot the bill and deliver a copy of a transcript to plaintiff. Absent a favorable judgment, <u>see</u> 42 U.S.C. § 1988, the defendant simply is not responsible for paying the costs of its own prosecution. Unsupported allegations of poverty are equally unavailing and are negated where plaintiff is represented by retained counsel, paid the required filing fee and the costs for service of his Complaint, and where he has made no application under 28, United States Code, Section 1915 to be declared a pauper. The court takes judicial notice that prison employment is common, that prisoners maintain trust accounts, and that required reports from such trust accounts under Section 1915 frequently show both income and expenditures that would be antithetical to a declaration of poverty. Indeed, contained in the exhibits attached to the plaintiff's brief is a document entitled "Employee Earnings Summary" which shows that from November 1, 2000 to August 30, 2004 the plaintiff had gross wages from his employment of 45,388.64 and net wages of 38,883.87. (cw1100068)

From review of the deposition excerpts provided, it is apparent that counsel for

plaintiff attended these depositions and would have reason to recall the testimony. Plaintiff has pointed to no reason, i.e., misrepresentation by defendants or taking statements out-of-context, why this court should depart from Local Rule 26.1. Finding no basis in law for the request,[3] the undersigned will recommend that this motion be denied.

## V.      Motion for Summary Judgment: Discussion

Defendants' motion for summary judgment seeks dismissal of all claims with prejudice. In so moving, defendants have raised the following issues for resolution by the court: (1) whether plaintiff can present evidence that would support a hostile work environment claim; (2) whether plaintiff claim of disparate treatment claim in the context of promotions, job transfers, and termination can be heard by this court; and (3) whether this court has subject matter jurisdiction over CWI. Each issue will be addressed *seriatim*.

### A.      Hostile Work Environment Claim

To survive defendants' Motion for Summary Judgment on his claim of a hostile work environment, plaintiff must present evidence upon which a reasonable finder of fact could return a verdict in his favor on each of the following elements:

(1)      he was harassed because of his race;

(2)      the harassment was unwelcome;

(3)      the harassment was sufficiently severe or pervasive to create a hostile work environment; and

(4)      some basis exists for imputing liability to the employer.

Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir 2001).

---

[3]      The only pre-judgment cost shifting provision this court can find is in 28 U.S.C. § 1915(c)(2), which shifts certain financial burdens to the government in very limited appellate and quasi appellate situations. Even in such situations, the costs of transcripts are limited to proceedings occurring before a magistrate judge.

The undersigned will cut to the heart of the matter. By resolving factual disputes in favor of plaintiff, which this court must do, plaintiff has presented evidence upon which a jury could find that he was harassed based on his race and that the harassment was unwelcome. Inasmuch as at least some of the alleged harassment was supposedly at the hands of a supervisor employed by USTC and that plaintiff reported such conduct to a USTC plant manager, there is some evidence upon which a jury could impute liability to the employer. A corporate employer may be held liable for a hostile-environment claim when it had actual or constructive knowledge of the existence of the hostile work environment and took no prompt remedial action, Paroline v. Unisys Corp., 879 F.2d 100, 106 (4th Cir. 1989); and even the "absence of notice does not necessarily insulate that employer from liability," Meritor Sav. Bank v. Vinson, 477 U.S. 57, 72 (1986). The Court of Appeals for the Fourth Circuit has held, as follows:

> An individual qualifies as an "employer". . . if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, and conditions of employment . . . . As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes.

Paroline v. Unisys Corp., supra, at 104. Defendant USTC could, therefore, be held liable for its failure to take adequate remedial steps when an employee only puts the offending supervisor rather than the plant manager on notice that his conduct is unacceptable. In this case, plaintiff's evidence tends to show that he put Judy Grubb on notice of the offensive remarks made by the supervisor. Thus, there is sufficient evidence to satisfy the fourth element for purposes of surviving summary judgment.

Having narrowed down the elements, the question presented is whether plaintiff has presented evidence of harassment that was sufficiently severe or pervasive to create a hostile work environment. "Title VII was not designed to create a federal remedy for all offensive

12

language and conduct in the workplace." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of his or her employment. Id. at 753 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 19 (1993), and Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

Taking the evidence in a light most favorable to plaintiff, he has alleged five occasions or incidents where he perceived racially motivated conduct towards him over a four year period. In 2001, two miniature nooses were found in the plant on separate dates; his supervisor's one-time use of the pejorative term "nigger rigged" sometime before 2003; plaintiff's supervisor unplugging of a machine plaintiff was using when he requested to his supervisor that such machine be fixed; and his overhearing of his supervisor referring to him as a "damn nigger" in 2003. The undersigned will review each alleged incident to determine first whether such incident is probative, and after such review, the undersigned will consider whether the quantum of evidence is sufficient for a finder of fact to find that plaintiff was subjected to severe and pervasive harassment. Such review will be in chronological order.

### 1. Nooses

While plaintiff argues in his brief that "the reaction of an African American to the sight of a noose is considerably different from the reaction of a white person to such a sighting," Response, at 4, counsel also states that "the evidence does not show that the nooses that were alleged to be placed in the plant were racially motivated . . . ." Id. This concession of plaintiff's counsel is supported by plaintiff's own testimony, in which he admitted that the noose were not directed to him. Apparently, then, plaintiff is arguing that it was the combined effect of the nooses and the racial slurs that lead him to take racial

offense at the nooses. The record is, however, undisputed that the nooses were placed two years before any of the alleged racial epithets were uttered. Further, the evidence from plaintiff's fellow inmates indicates that the nooses were neither racially motivated nor directed at plaintiff. Charles Dep., at 12-33. Because there is no evidence that the nooses had anything to do with race, or that plaintiff perceived they were directed at him, the nooses are not probative on the issue of whether plaintiff was subjected to severe and pervasive racial harassment.

### 2.    Unplugging Plaintiff's Machine

Turning next to plaintiff's allegation concerning his supervisor's unplugging of his machine, the only evidence plaintiff has presented is his own speculation that his supervisor's motivation in unplugging his machine was racial. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982). Speculative assertions that a defendant's or a person's motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988); and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985). Plaintiff's allegations of discriminatory animus in unplugging his machine are clearly speculative. A court cannot allow a jury to decide issues based on speculation. Fed.R.Evid. 401 & 602. Thus, such incident cannot be properly considered under the third element.

### 3.    Use of the term "Nigger"

This leaves Gardner's alleged pejorative statement concerning the condition of the machine sometime before 2003 and the racial comment Gardner allegedly made to one of plaintiff's coworkers in 2003. Plaintiff argues that he found such comments offensive, Response, at 3, and rightfully so inasmuch as use of the word "nigger" in any context is inherently offensive. <u>Spriggs v. Diamond Auto Glass</u>, <u>supra</u>. The undersigned finds that these comments are probative on the issue of a hostile work environment.

4.   **Whether Sufficient Probative Evidence Has Been Presented Upon Which a Finder of Fact Could Find in Favor of Plaintiff on the Third Element**

The question becomes whether the use of a racial epithet in one year in referring to an inanimate object and in another year in referring to plaintiff , all encompassed within a four year period of work, is both severe and pervasive so as to create a work environment that is hostile to plaintiff.

As the Court of Appeals for the Fourth Circuit has held: "Whether . . . harassment was sufficiently severe or pervasive is quintessentially a question of fact." <u>Paroline v. Unisys Corp.</u>, <u>supra</u>, at 105. In the context of summary judgment, the issue is whether two isolated incidents in four years is sufficient as a matter of law to warrant trial. In <u>Hartsell v. Duplex Products, Inc.</u>, 123 F.3d 766 (4th Cir. 1997), the appellate court held that Title VII "prohibits only harassing behavior that is so severe and pervasive as to render the workplace objectively hostile." <u>Id.</u>, at 773. In <u>Harris v. Forklift Systems, Inc.</u>, <u>supra</u>, the Supreme Court held that isolated comments are simply not enough to give rise to a Title VII claim of unlawful harassment. Severe conduct is conduct that would be extreme, amounting to a change in the terms and conditions of employment. <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75 (1998).

Considering each incident, neither is "severe" in that it could not be reasonably

**15**

viewed as changing the terms and conditions of plaintiff's employment. First, the epithet used in describing the condition of a machine, while inherently offensive, cannot be reasonably construed to alter the terms of plaintiff's employment. Plaintiff's own testimony is antithetical to his argument, in that he testified that he had a good working relationship with Gardner and that Gardner asked his permission before making what later turned out to be a racially derogatory remark. As to the racially derogatory comment supposedly directed to plaintiff personally in 2003, while inherently offensive, Title VII does not mandate an insult-free workplace. Plaintiff points to no other incidents of use of such vulgarity, and to no incidents of subsequent conduct by his supervisor indicating any change in how plaintiff was treated.

In determining whether there was a hostile or abusive work environment, the court looks to the totality of the circumstances. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). In making such a determination, the Supreme Court requires courts to consider

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harris v. Forklift Sys., Inc., supra, at 23. Indeed, plaintiff continued to work at the operation for almost another year, insult free as he testified, and with no decrease in his personal productivity. Grubb Aff., at ¶ 19, Attach., at USTC 100142 through USTC 100170. Applying all of those factors, it is readily apparent that plaintiff was infrequently exposed to two racial slurs, that those statements were not physically threatening or humiliating and were mere offensive utterances and that they no way interfered with the quality of his work.

The appellate court in Hartsell pointed out that the misconduct must render the workplace *objectively* hostile, not subjectively. The court has searched plaintiff's evidence

and, while finding that plaintiff subjectively believed he was treated differently due to race, the undersigned can find no objective evidence that the two racist remarks were followed by any change in treatment of plaintiff. Although such comments reflect an archaic, insensitive, and crude attitude, they affected no term or condition of plaintiff's employment. Even if the court were to take into consideration the three earlier incidents found not to be probative, it appears that they had no objective impact on plaintiff's day-to-day employment.

Plaintiff has not satisfied his burden of coming forward with evidence upon which a reasonable finder of fact could determine that his workplace was charged with race-based discrimination so as to make it objectively abusive. See Smith v. First Union Natl. Bank, 202 F.3d 234 (4th Cir. 2000). Title VII simply does not guarantee a workplace free from racial slurs, insensitive coworkers, and nescient supervisors. Plaintiff's Title VII hostile-work-environment claim, therefore, should be dismissed and the undersigned will so recommend.

**B.     Disparate Treatment in Promotions, Transfers, and Termination**

Plaintiff's claims of disparate treatment in promotion, transfer and termination cannot be heard by this court because such claims are beyond the scope of his EEOC charge. Review of the EEOC charge reveals that no allegation was made of disparate treatment in promotions, transfers, or termination. Charge, Pl.'s Dep., Defs.' Ex. 8.

Under Title VII, a suit may not be maintained in federal court until such time as the aggrieved person has exhausted his or her administrative avenues for redress. Love v. Pullman Co., 404 U.S. 522 (1972). The EEOC may not be bypassed in order to make direct application to the courts. Stebbins v. Nationwide Mut. Ins. Co., 382 F.2d 267 (4th Cir. 1967), cert. denied, 390 U.S. 910, reh'g denied, 390 U.S. 976 (1968).

> [O]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.

<u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 963 (4th Cir. 1996). This court lacks jurisdiction over such claims, and the undersigned will recommend that they be dismissed accordingly.

### C.    Jurisdiction Over CWI

Just likes the administrative exhaustion requirement concerning particular claims, a plaintiff must also name defendants in the administrative charge prior to filing a civil suit in this court. The undersigned has already addressed this issue in an earlier recommendation, and incorporates such discussion as if fully set forth.

Title VII provides that a civil action may be brought in federal court only "against the respondent named in the charge" which was filed with the EEOC. 42 U.S.C. § 2000e-5(f)(1). CWI was not named in the charge, and plaintiff puts a great deal of stock in the supposed errors of the EEOC in not naming CWI. Administrative error does not, however, appear to be an exception.

In the Western District of North Carolina, the district court has consistently held that "Title VII precludes a plaintiff from stating a claim against any defendant not named as a respondent in an EEOC charge." <u>Schilling v. Rutherford Pediatrics, P.A.</u>, 346 F.Supp.2d 828 (W.D.N.C.2004);   <u>Jackson v. Blue Dolphin Communications of North Carolina</u>, ___ F.Supp.2d___, 2004 WL 3216067 (W.D.N.C. 2004). <u>See</u> <u>also</u> <u>Mickel v. South Carolina State Employment Service</u>, 377 F.2d 239, 241-42 (4th Cir. 1967). Two exceptions to this requirement have developed where (1) the named and unnamed parties have the same functional identity, <u>Alvarado v. Board of Trustees</u>, 848 F.2d 457 (4th Cir.1988), or (2) where plaintiff can show that the unnamed employer had actual notice of the EEOC conciliatory efforts and participated in the EEOC proceedings. <u>Bostic v. Wall</u>, 588 F.Supp. 994, 997

(W.D.N.C.1984), aff'd, 762 F.2d 997 (4th Cir.1985). The "substantial identity" test, as discussed at length in the earlier recommendation, has not yet been recognized. Tietgen v. Brown's Westminster Motors, Inc., 921 F.Supp. 1495 (E.D.Va.1996).

Even if the court were to assume that all three tests were available, plaintiff has failed to present evidence that would carry his burden as any one of the three. Instead, CWI has submitted evidence that it was not aware of the EEOC charge, that it is a wholly separate and distinct company from USTC, and had it know of the charge, it would have had an interest in participating in the conciliation process afforded by the EEOC. Smith Aff., at ¶¶ 10-12, Exhibit "B"; Smith letter, December 17, 2004.

While the undersigned recommended and the district court allowed plaintiff an opportunity to secure additional discovery prior to reaching this issue, discovery has not produced any further evidence to support jurisdiction over CWI. Defendants have supplied unrebutted materials that it is a completely separate entity from USTC, and has little direct involvement in the PIE operation other than acting as contractual agent with the DOC and as payroll agent for USTC. CWI and USTC are separate legal entities, without any commonality of directors, officers or employees. Smith Aff., at ¶¶ 5-7, Lengers Aff., at ¶¶ 6-9. Plaintiff considered USTC to be his employer, he believes he was hired by a USTC employee, and he admits that he never "dealt with" CWI and that everything he did was "part of US Textile." Pl.'s Dep., at 147-150. Finding that plaintiff failed to name CWI in his administrative charge, the undersigned will recommend, in the alternative, that all claims against CWI be dismissed for lack of subject matter jurisdiction.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     defendants U.S. Textile Corp.'s and Consolidated Work Industries, Inc.'s Motion for Summary Judgment (#36) be **ALLOWED,** that this action be dismissed in its entirety, and that **JUDGMENT** be entered in favor of defendants and against plaintiff providing that plaintiff have and take nothing of these defendants;

(2)     as to defendant Consolidated Work Industries, Inc., as a further basis for dismissal of all claims against it, and as an alternative basis for decision, that such defendant's Motion for Summary Judgment on the grounds of lack of subject matter jurisdiction be **ALLOWED**, and that all claims against such defendant be **DISMISSED** with prejudice; and

(3)     plaintiff's Motion to Compel Filing of Transcripts of Depositions Conducted by Defendants (#44) be **DENIED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984). Any and all objections shall be double spaced and at least in 12 point type.

**Signed: November 29, 2005**

Dennis L. Howell
United States Magistrate Judge